IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00315-PSF-PAC

GLENN ROSENSTEIN,

      Applicant,

v.

R. WILEY, WARDEN,

      Respondent,

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

O. Edward Schlatter, United States Magistrate Judge

      This is a habeas corpus proceeding filed *pro se* by federal prisoner Glenn Rosenstein under 28 U.S.C. §2241.  Also pending is Applicant's Motion for Preliminary Injunction, filed April 13, 2006. An April 12, 2006 Order of Reference referred the Application to Magistrate Judge Patricia A. Coan for a recommendation on disposition.[1] Respondent filed an Answer to the court's Order to Show Cause on May 8, 2006. Applicant filed his Traverse on May 30, 2006.

I.

      Mr. Rosenstein is incarcerated at the Federal Prison Camp ("FPC") in Florence, Colorado, serving a thirty-month prison sentence for trafficking in counterfeit goods, to be followed by a thirty-six month term of supervised release.  His projected prison release date is August 11, 2007.

---

[1]I was recalled to assume Magistrate Judge Coan's caseload upon her retirement pending the hiring of a new United States Magistrate Judge.

Applicant challenges the Bureau of Prisons' regulation, 28 C.F.R. §570.21, that limits a federal prisoner's placement in a community corrections center ("CCC") (also known as a halfway house) to the last ten percent of his prison sentence, not to exceed six months.  Applicant claims that the regulation is an impermissible agency construction of 18 U.S.C. §3621(b).

Mr. Rosenstein asks the court to order Respondent to "consider [him] in good faith for an immediate transfer to a Community [Confinement] Center" and to declare 28 C.F.R. §570.21 invalid.  Memorandum in Support of §2241 Petition, at 10.

II.

A.   Ripeness

Respondent first argues that Mr. Rosenstein's claim is not ripe for adjudication.

The ripeness doctrine is "intended 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir.1995)(quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).  Ripeness is a two-fold inquiry.  I first consider whether the issue is fit for judicial review by focusing on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (quoting 13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532 at 112).  I also consider the hardship to the Applicant of withholding judicial consideration.  *Id.*

2

In accordance with BOP Program Statement 7310.04,[2] BOP staff met with Mr. Rosenstein in June 2006 for a progressive review and advised Applicant that he would be eligible for CCC referral on March 25, 2007, with a projected CCC placement date of May 25, 2007. *See* Respondent's Answer to Second Order to Show Cause, filed November 9, 2006. Respondent argues that Mr. Rosenstein's claim is not ripe at this time because he is not yet eligible for CCC referral.

I disagree. The BOP has already applied 28 C.F.R. §§570.21 to Mr. Rosenstein by advising him, pursuant to that regulation, that he is not eligible for a CCC referral until March 25, 2007 at the earliest. As discussed in Section III, *infra*, the statute which the regulation interprets, 18 U.S.C. §3621(b), grants the BOP discretion to "designate the place of a prisoner's imprisonment," and to transfer an inmate, after considering certain factors enumerated in the statute. Applicant argues that the BOP's implementing regulation, 28 C.F.R. §570.21 is an invalid interpretation of its statutory authority because the regulation  limits the agency's authority to initially designate a federal prisoner to a CCC to serve his sentence, and to transfer an inmate to a CCC at any time during his sentence. I find that there is a potential hardship to Mr. Rosenstein of withholding judicial consideration and decline to dismiss the Application on ripeness grounds. *See Bassett*

---

[2]BOP Program Statement 7310.04 (dated 12/16/98)(located at www.bop.gov/policy/), titled "Community Correction Center (CCC) Utilization and Transfer Procedure," provides, in relevant part: "A final and specific release preparation plan, including a decision as to  CCC referral, is normally established at a team meeting no later than 11 to 13 months before an inmate's projected release date." (*Id.* at 7)  In determining the length of an inmate's CCC placement, staff considers various factors such as an inmate's institutional adjustment, individual needs, existing community resources, and the length of an inmate's sentence.   (*Id.*)

3

*v. Wiley*, 2006 WL 2734311 (D.Colo. 2006)(Wiley, J)[3](reaching merits of §2241 Application

challenging validity of 28 C.F.R. §570.21 and declining to address BOP's argument that

Application was not ripe because BOP would not consider the applicant's eligibility for

CCC referral for approximately one year[4]).

B.    Exhaustion of Administrative Remedies

Respondent next argues that Mr. Rosenstein's §2241 Application should be

dismissed for failure to exhaust administrative remedies.

Generally, a federal prisoner must exhaust administrative remedies before seeking

federal habeas corpus relief under 28 U.S.C. §2241.   *See Williams v. O'Brien*, 792 F.2d

986, 987 (10th Cir. 1986).   However, exhaustion may be futile if the agency has

predetermined the issue before it.   *See McCarthy v. Madigan*, 503 U.S. 140, 148 (1992).

The federal regulation which Respondent asserts as a defense to this action, 28

C.F.R. §570.21, prohibits the BOP from referring an inmate to community confinement

before the last ten percent of his sentence (not to exceed six months).   The regulation

does not allow for deviation from that period unless a specific BOP program provides for

a greater period of community confinement.   *See* 28 C.F.R. §570.21(b).   Respondent does

not allege that any such programs are available to Mr. Rosenstein.   Accordingly,

administrative relief is not a possibility because the agency has predetermined the issue.

I decline to recommend dismissal of the Application on exhaustion grounds because

---

[3]A copy of *Bassett* is attached to the Recommendation.

[4]*See Bassett v. Wiley*, Civil Action No. 06-cv-00374, Respondent's Answer to Order to Show
Cause Dated April 13, 2006 (Doc. #8), at 9-10.

requiring Applicant to complete the administrative process would be futile.  *See Bassett*,

2006 WL 2734311 at *3 (excusing exhaustion requirement for prisoner who challenged

validity of 28 C.F.R. §570.21 as futile); *Pimentel v. Gonzales*, 367 F.Supp. 365, 371-72

(E.D.N.Y. 2005)(same); *United States v. Paige*, 369 F.Supp.2d 1257, 1260 (D.Mont.

2005)(same).

III.

A.      <u>Statutory Framework and History of BOP's CCC Placement Policy</u>

The BOP's authority to place and transfer federal prisoners is derived from two

statutes.  The first, 18 U.S.C. §3621(b), confers discretion on the BOP to "designate the

place of the prisoner's imprisonment" including "any available penal or correctional facility

that meets minimum standards of health and habitability established by the Bureau, [after]

considering –

> (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence– (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.[5]

The second relevant statute, 18 U.S.C. §3624(c), directs the BOP to prepare prisoners for

re-entry into the community.  The applicable provision states:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per

---

[5]Under the second paragraph of subsection (b), the BOP may transfer a prisoner from one penal or correctional facility to another, "having regard for the same matters."

> centum of the term to be served under conditions that will
> afford the prisoner a reasonable opportunity to adjust to and
> prepare for the prisoner's re-entry into the community.

18 U.S.C. §3624(c).

The BOP's practice prior to December 2002 was to transfer federal inmates to CCCs for up to the last six months of their sentences, regardless of the length of the sentence imposed. *See, generally, Goldings v. Winn*, 383 F.3d 17, 19 (1st Cir. 2004); *Elwood v. Jeter*, 386 F.3d 842, 844 (8th Cir. 2004). The BOP's former policy is embodied in BOP Program Statement 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedures, (issued December 16, 1998)(available at *www.bop.gov*).[6] *See, also, Levine v. Apker*, 455 F.3d 71, 75 (2d Cir. 2006)(citing Program Statement 7310.04 as applicable BOP policy on CCC placement prior to December 13, 2002).

On December 13, 2002, the Department of Justice Office of Legal Counsel ("OLC") issued a Memorandum concluding that the BOP's statutory authority under 18 U.S.C. §3621(b) to transfer an inmate to a CCC during the course of his sentence was limited by 18 U.S.C. §3624(c). *See* OLC Memorandum Opinion on the Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who have Received Sentences of Imprisonment, dated December 13, 2002.[7] The OLC reasoned that §3621(b) did not

---

[6]Program Statement 7310.04 construes 18 U.S.C. §3621(b) together with 18 U.S.C. §3624(c) and instructs that "the Bureau is not restricted by §3624(c) in designating a CCC for more than the `last ten per cent um of the term,' or more than six months, if appropriate." (Program Statement, at 4). The Program Statement further directs that "[a]n inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification." (Program Statement, at 8)

[7]The OLC Memorandum is available at www.usdoj.gov/olc/bopimprisonment2.htm.

grant the BOP general authority to transfer an inmate to community confinement at any time during the course of the inmate's sentence and that the BOP's policy of placing inmates in community confinement for the last six months of their sentences was unlawful because §3624(c)restricted CCC placement to the lesser of the last ten percent of the sentence imposed on the offender, or six months. (OLC Memorandum, at 6 and n.6)  The Deputy Attorney General adopted the OLC's position on December 16, 2002.  *Goldings*, 383 F.3d at 20; *Elwood*, 386 at 845.  On December 20, 2002, the BOP instituted a new CCC placement policy consistent with the OLC Memorandum.  *Id.*

Several federal courts held that the BOP policy derived from the OLC Memorandum was contrary to the plain meaning of 18 U.S.C. §3621(b) and was therefore not entitled to judicial deference.  *See Goldings*, 383 F.3d at 28-29; *Elwood*, 386 F.3d at 847 (and federal district court cases cited therein invalidating the BOP policy).  Those courts determined that 18 U.S.C. §3624(c) does not limit the BOP's discretionary authority under §3621(b) to transfer a federal inmate to a CCC at any time during the inmate's term of imprisonment. *Id.*

In response to *Goldings* and *Elwood*, the BOP proposed new regulations on August 18, 2004, "announcing its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment." 60 Fed.Reg. 51213 (Aug. 18, 2004).  The final rules, which became effective February 14, 2005, are codified at 28 C.F.R. §570.20 and §570.21.  The regulations state, in relevant part:

**§570.20 What is the purpose of this subpart?**

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement.

The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

**§570.21 When will the Bureau designate inmates to community confinement?**

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

B.   <u>Whether the Challenged Regulation is Consistent with the Agency's Statutory Authority</u>

Mr. Bell argues that 28 C.F.R. §570.21 is an invalid interpretation of 18 U.S.C. §3621(b) because the regulation  divests the BOP of its statutory authority to designate any available, suitable and appropriate institution or facility as an inmate's place of confinement, including a CCC, and to transfer an inmate to community confinement  at any time during the inmate's sentence, based on full consideration of the factors enumerated in 18 U.S.C. §3621(b).

To determine whether 28 C.F.R. §570.21 is a valid interpretation of 18 U.S.C. §3621(b), I first consider "whether Congress has spoken directly to the precise question at issue" in such a way that the intent of Congress is clear. *Chevron v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 842 (1984).   If Congressional intent is clear, my inquiry ends because I must give effect to the expressed intent of Congress; however, if the statute is silent or ambiguous on the precise question at issue, I must determine

8

whether the BOP's interpretation "is based on a permissible construction of the statute." *Id.* at 843. When Congress has left a gap in the statute, I defer to the agency's interpretation as long as that interpretation is reasonable. *Id.* at 844.

There is a split of authority in the federal courts about the validity of 28 C.F.R. §570.21. The three Circuit Courts of Appeal to have considered the issue, as well as District Judge Wiley Daniel of this court, have held that the regulation is invalid. *See Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Woodall v. BOP*, 432 F.3d 235 (3rd Cir. 2005); *Wedelstedt v. Wiley*, 2006 WL 2475268 (D.Colo. 2006)(Daniel, J.).[8] Three other District Judges in the District of Colorado have concluded that the   regulation is a permissible construction of the BOP's discretionary authority under 18 U.S.C. §3621(b), pursuant to the Supreme Court's decision in *Lopez v. Davis*, 531 U.S. 230 (2001). *See Bichon v. Wiley*, 2006 WL 3293038 (D.Colo. 2006)(Nottingham, J.);[9] *Montoya v. Rios*, 2005 WL 3271489 (D.Colo. 2005)(Figa, J.);[10] *Hurley v. Sherrod*, Civil Action No. 05-cv-01177-LTB-PAC (D.Colo. 2005)(Babcock, Chief J.).[11]  District courts outside the District of Colorado are divided on the issue. *See Woodall*, 432 F.3d at 244 n. 9 and n.10 (collecting cases).

The Government urges the court to rely on *Hurley*, *Montoya* and cases from other district courts which have upheld 28 C.F.R. §570.21 as a reasonable interpretation of 18

---

[8]A copy of *Wedelstedt* is attached to the Recommendation.  The Government's appeal of *Wedelstedt* is pending before the Tenth Circuit Court of Appeals in USCA Case No. 06-1461.

[9]A copy of *Bichon* is attached to the Recommendation.

[10]A copy of *Montoya* is attached to the Recommendation.

[11]A copy of *Hurley* is attached to Respondent's Answer.

U.S.C. §3621(b), by relying on the Supreme Court's decision in *Lopez v. Davis.* In *Lopez*, the Supreme Court addressed the validity of the BOP's regulation implementing 18 U.S.C. §3621(e)(2)(B). The statutory provision states: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons [by up to one year]." The challenged regulation, 28 C.F.R. §550.58(a)(1)(vi)(B), categorically denies early release to prisoners whose current offense is a felony attended by "the carrying, possession, or use of a firearm." The Supreme Court found that 18 U.S.C. §3621(e)(2)(B) confers discretionary authority on the BOP to reduce by up to one year the prison term of an inmate convicted of a nonviolent felony, if the inmate successfully completes a substance abuse program, but that "Congress has not identified any further circumstance in which the Bureau either must grant the reduction or is forbidden to do so." *Lopez*, 531 U.S. at 242. Applying *Chevron* deference, the Supreme Court concluded that its review was limited to whether the BOP reasonably filled the statutory gap in adopting an additional category of inmates who were ineligible for early release – those whose current offense is a felony involving a firearm. *Id.* at 242 (citing *Chevron U.S.A., Inc.*, 467 U.S. at 842)

The Supreme Court held that the Bureau acted reasonably in determining that possession of a firearm in connection with a felony suggests a readiness to endanger another's life and in categorically excluding those inmates from early release eligibility. 531 U.S. at 244. The Court also rejected the petitioner's contention that the BOP may not make categorical exclusions, but must rely only on individualized assessments. *Id.* at 243. "`[E]ven if a statutory scheme requires individualized determinations, . . . the

decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'" *Id.* at 244 (quoting *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991)). The Supreme Court concluded that the BOP may categorically exclude prisoners from early release based on their preconviction conduct because nothing in Section 3621(e)(2)(B) restricts the BOP's authority to exercise its discretion through rule making. *Id.*

In *Hurley v. Sherrod*, Chief Judge Babcock adopted the Recommendation of Magistrate Judge Patricia A. Coan to deny Mr. Hurley's §2241 Application challenging the validity of 28 C.F.R. §520.21. *See Hurley v. Sherrod*, Civil Action No. 05-cv-01177-LTB-PAC, September 21, 2006 Order adopting September 1, 2006 Recommendation of United States Magistrate Judge, attached to Respondent's Answer as Ex. H. Magistrate Judge Coan found that 28 C.F.R. §570.21, like the regulation at issue in *Lopez*, represents a categorical exercise of the Bureau's statutory discretion: "The BOP `has identified a category of prisoners – inmates who are not yet required to be considered for transfer to a CCC under Section 3624(c), but are eligible under Section 3621(b) – and created a rule denying transfers to all of them.'" *Hurley v. Sherrod*, Civil Action No. 05-cv-01177-LTB-PAC, September 1, 2005 Recommendation of United States Magistrate Judge, at 9 (quoting *Yip v. Federal Bureau of Prisons*, 363 F.Supp.2d 548, 552 (E.D.N.Y. 2005)), attached to Respondent's Answer, as Ex. H.

Magistrate Judge Coan made the following recommendation:

> I recommend a finding that the BOP's interpretation of 18 U.S.C. §3621(b) is reasonable. The statute does not require the BOP to place an inmate in a CCC at any time. Instead, the statute confers discretion on the BOP to designate an inmate's

place of imprisonment and sets forth five factors for consideration in making such determinations. The BOP has stated that the agency considered each of the five statutory factors in drafting the regulation. *See* Proposed Rule, 69 Fed. Reg. 51, 214 ("In deciding to limit inmates' community confinement to the last ten percent of the prison sentence, not to exceed six months, the Bureau has carefully considered all of the statutorily-specified factors, as well as the additional considerations that it identified as pertinent.")

Moreover, the BOP will continue to consider the five statutory factors when designating or transferring inmates to correctional facilities. *See* Final Rule, 70 Fed. Reg. at 1660 ("The Bureau will continue to evaluate [the factors set forth in Section 3621(b)] when making individual designations to appropriate Bureau facilities, and this rule will not adversely effect such individualized determinations.").

*Id.* at 9-10.

Magistrate Judge Coan found no reason to disregard the BOP's express representations during the rule-making process that all the statutory factors were considered in promulgating the rule. *Id.* at 10.

Magistrate Judge Coan next addressed whether the BOP's categorical denial of CCC placement to all federal prisoners prior to the last ten percent of their sentences, not to exceed six months, conflicts with any Congressional directive. *See Lopez*, 531 U.S. at 244. After determining that nothing in §3621(b) prohibits the Bureau from regulating its statutory discretion through the promulgation of categorical rules, Magistrate Judge Coan recommended finding that 28 C.F.R. §570.21 is a reasonable and permissible construction of the BOP's discretionary authority to designate the place of a prisoner's imprisonment under 18 U.S.C. §3621(b). *Id.* at 11.

In *Montoya v. Rios*, Civil Action No. 05-cv-00606-PSF-PAC (decided Nov. 30, 2005), District Judge Figa adopted Magistrate Judge Coan's recommendation to deny another inmate's §2241 Application challenging the validity of 28 C.F.R. §570.21. District Judge Figa agreed with the *Sherrod* decision, and the majority of the district courts outside of Colorado which had addressed the issue, in concluding that the regulation is "a reasonable and permissible construction of the BOP's discretionary authority [under 18 U.S.C. §3621(b)] to designate the place of a prisoner's imprisonment." *Montoya*, 2005 WL 3271489 at *2 (quoting *Montoya v. Rios*, Civil Action No. 05-cv-00606-PSF-PAC, October 26, 2005 Recommendation of United States Magistrate Judge, at 9, 11).

After *Sherrod* and *Montoya* were decided in this court, the Second, Third and Eighth Circuits determined that the regulation is invalid.  The Circuits found that 28 C.F.R. §570.21 is contrary to §3621(b)'s unambiguous language because it categorically removes the BOP's ability to consider all of the statutory factors explicitly set forth by Congress for making individual CCC placement and transfer decisions.  *See Woodall*, 432 F.3d at 244-45, 248; *Fults* 442 at 1091-92; *Levine*, 455 F.3d at 81-82, 87.  The federal appellate courts interpreted Section 3621(b) as empowering the BOP with discretionary authority to place a prisoner in any suitable facility, "so long as" the agency considers the factors enumerated in §3621(b), and found that interpretation was supported by the statute's legislative history.[12]  *Woodall*, 432 F.3d at 245; *Levine*, 455 F.3d at 82; *accord Fults*, 442

---

[12]The Senate Committee report states that "[i]n determining the availability or suitability of the facility selected, the Bureau is specifically required to consider such factors as [the factors enumerated in the statute] and further states that "[a]fter considering these factors, the Bureau of Prisons may designate the place of imprisonment . . . or may transfer the offender."  S.Rep. No. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3324-25.

F.3d at 1092.  The First Circuit further found that the statute precludes the BOP from removing CCC's from the "available penal or correctional facilit[ies]" to which an inmate can be initially placed or transferred, absent consideration of the statutory factors. *Levine*, 455 F.3d at 82 n.8 (noting that because the BOP promulgated 28 C.F.R. §570.21 under the authority of 18 U.S.C. §3621(b),[13] "the BOP necessarily placed CCCs within the category of institutions governed by the statute . . . [a]nd, since they are available, the BOP must comply with the factors made mandatory by Congress in assigning prisoners to them"); *accord Fults*, 442 F.3d at 1092 ("A BOP decision to not transfer an inmate – or, as in this case, a group of inmates – requires the same consideration of the §3621(b) factors as does the decision to transfer an inmate to a CCC"); *Woodall*, 432 F.3d at 250 (rejecting Government's argument that the BOP need not consider the statutory factors until an inmate is "actually considered" for a transfer because Congress expressed a clear intent in §3621(b) that all prisoner placement decisions must be based on the factors enumerated in the statute).

The Second, Third and Eighth Circuits distinguished *Lopez* on the ground that the statute at issue in *Lopez* did not instruct the BOP to make "individual, rather than categorical, assessments of eligibility for inmates convicted of nonviolent offenses," *Lopez*, 531 U.S. at 237, whereas  in 18 U.S.C. §3621(b), Congress enumerated specific factors for the BOP to consider in determining where an inmate is placed or transferred, including the recommendation of the sentencing judge.  *Woodall*, 432 F.3d at 246; *Fults*, 442 F.3d

---

[13] *See* Community Confinement Proposed Rule, 60 Fed.Reg. 51213 (Aug. 2004) ("Because various courts have held that the Bureau has discretion under 18 U.S.C. 3621(b) to place offenders sentenced to a term of imprisonment in CCCs, the Bureau considers it prudent to determine how to exercise such discretion.")

at 1091; *Levine*, 455 F.3d at 86.   The *Woodall* court also rejected the government's argument, relying on dictum in *Lopez*, that even when individualized determinations are required, the executive "has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Woodall*, 432 F.3d at 247 (quoting *Lopez*, 531 U.S. at 243-44).   The Third Circuit reasoned that sentencing recommendations and other individual factors are not generally applicable and that Congress did clearly express an intent to withhold authority from the BOP to make CCC placement and transfer decisions without the guidance of the statutory factors.   *Woodall,* 432 F.3d at 247.

The Second Circuit also rejected the Bureau's argument that its categorical rule was appropriate under *Lopez.*  The *Levine* court admonished: "Categorical rulemaking, like all forms of agency regulation, must be consistent with unambiguous Congressional instructions.   And, an agency may not promulgate categorical rules that do not take account of the categories that are made significant by Congress." *Levine*, 455 F.3d at 85 (internal citation omitted).

The Second, Third and Eighth Circuits further determined that the BOP's contention that it considered all of the statutory factors in making its categorical exercise of discretion was without merit because three of the five enumerated factors – the circumstances of the offense, the history and characteristics of the prisoner, and any statement by the sentencing court – relate to an inmate's individual circumstances; thus, it would have been impossible for the Bureau to have considered those factors when it promulgated the

15

regulations. *Woodall*, 432 F.3d at 248; *Fults*, 442 F.3d at 1092; *Levine*, 455 F.3d at 85 n.9.

I have carefully considered the decisions of the Second, Third and Eighth Circuits Court of Appeals, and District Judge Wiley Daniel's decision in *Wedelstedt*.   I find the reasoning of those decisions more persuasive and compelling than the reasoning of the earlier decisions from this district in *Sherrod* and *Montoya*.

I agree with the Circuits and Judge Daniel that 18 U.S.C. §3621(b) confers discretionary authority on the Bureau to place an inmate in, or transfer an inmate to, any available penal or correctional facility, after first considering the statutory factors. Because the statutory language is clear that consideration of the five placement/transfer factors is mandatory, and three of the enumerated factors are based on individual circumstances, the BOP may not promulgate a categorical rule that forecloses evaluation of those factors for CCC placement prior to the last ten percent of the inmate's sentence (not to exceed six months). I further find that *Lopez* is distinguishable and inapposite for the reasons discussed in *Woodall*, *Fults*, *Levine* and *Wedelstedt*.

I respectfully disagree with District Judge Nottingham's decision in *Bichon v. Wiley*, adopting the Recommendation of United States Magistrate Judge Michael Hegarty to deny a §2241 Application challenging the validity of 28 C.F.R. §570.21 (and raising other constitutional claims not relevant here).  In *Bichon,* Magistrate Judge Hegarty concluded that 28 C.F.R. §570.21 was a reasonable and permissible construction of the BOP's discretionary authority under 18 U.S.C. §3621(b).  *Bichon*, 2006 WL 3293038 at *7.  The court first considered 18 U.S.C. §3624(c) and found that statute identifies a penalogical

goal of assisting prisoners in their reentry into the community that is not mentioned in §3621(b), and which may only be served by the BOP during a particular part of an inmate's incarceration: the last ten percent of a prison sentence, not to exceed six months. *Id.* at *6. Magistrate Hegarty then reasoned that "promulgating a rule that categorically excludes CCCs from among the `available penal and correctional facilit[ies]' to which the BOP may designate or transfer prisoners, except when endeavoring to meet other statutory obligations (such as the time-specific restrictions of § 3624(c)), cannot logically be deemed an abuse of the rule making authority of the BOP." *Id.* (citing Proposed Rule, 69 Fed.Reg. 51213, 51214 (2004) (stating that the proposed regulation was "supported by consideration of the congressional statutory policy as reflected in related statutory provisions,"and "[w]hether or not Section 3624(c) precludes the [BOP] from designating a prisoner to community confinement for longer than the lesser of the last ten percent of the sentence or six months, it is consistent with the congressional policy reflected in that section for the [BOP] to exercise its discretion to decline to designate a prisoner to community confinement for longer than that time period").

Magistrate Judge Hegarty further found that the BOP's categorical rejection of CCCs as "available penal or correctional facilities" under §3621(b) (before the Bureau's obligations under §3624(c) were triggered for a particular inmate) is supported by the analogous application of *Lopez. Id.* Magistrate Judge Hegarty concluded that, under the reasoning of *Lopez*, the BOP could "categorically conclude that certain facilities, such as CCCs, are generally not suitable for § 3621(b) placement, even while these same facilities

can be useful in meeting statutory requirements [such as those imposed by §3624(c)] in addition to those specified in §3621(b)." *Id.* at *6.

Magistrate Judge Hegarty's decision in *Bichon* was also the basis of Justice Raggi's dissenting opinion in *Levine*. Justice Raggi construed 28 C.F.R. §570.21 as "categorically exclud[ing] CCCs from among the `available penal and correctional facilit[ies]' to which it may designate or transfer prisoners, except when the BOP strives to meet other statutory obligations, such as the time-specific reentry mandate of §3624(c)." *Levine*, 455 F.3d at 89 (Raggi, J., dissenting).   Justice Raggi found that the Supreme Court's in dicta statement in *Lopez* that "[e]ven if a statutory scheme requires individual determinations, the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability," *Lopez*, 531 U.S. at 243-44, supported the BOP's authority to promulgate a rule categorically excluding CCCs from eligibility for §3621(b) placement, even though such facilities can be useful to the BOP in meeting other statutory goals. *Id.* Judge Raggi emphasized that the Bureau would continue to consider the applicability of §3621(b)'s factors in making placement and transfer decisions to available penal and correctional facilities, either generally under §3621(b) (excluding CCC's), or specifically pursuant to other statutory mandates. *Id.*

Under *Bichon*, and Justice Raggi's dissenting opinion in *Levine*, the Bureau has discretionary authority to categorically exclude CCCs from the list of "available penal or correctional facilit[ies]" for prisoner placement decisions informed by the five factors enumerated in 18 U.S.C. §3621(b); instead making CCCs available to federal prisoners

only when the Bureau's obligations under 18 U.S.C. §3624(c) are triggered.  This position has appeal at first blush, but does not hold up on closer scrutiny.

The District of Massachusetts addressed this issue directly in *Muniz v. Winn*, ___ F.2d ___, 2006 WL 3365662 (D.Mass. Nov. 21, 2006).[14]  In *Muniz*, the BOP argued that it may categorically exclude CCCs from the list of "available penal and correctional facilit[ies]."  The district court found that because "CCCs have been considered penal or correctional facilities by Congress, the courts, *and* the BOP since at least 1965, when CCCs were expressly added to the list of possible placement facilities, . . .[and] the BOP *continues* to consider CCCs to be penal or correctional facilities in other contexts," there was no ambiguity in the statute and CCCs must remain on the BOP's list of possible available facilities under 18 U.S.C. §3621(b).  *Muniz*, 2006 WL 3365662 at *6 (citing *Iacaboni v. United States*, 251 F.Supp.2d 1015, 1026 (D.Mass. 2003)) (discussing the history of CCC placement and relevant statutes); *Goldings*, 383 F.3d at 26-27 ("If . . . a CCC may be a place of imprisonment during the last ten percent of a . . . term of imprisonment, it would be incongruous to concluded that the same CCC may not be a place of imprisonment during any portion of the first ninety percent of that term.")

I am not persuaded that the Bureau has discretion to promulgate a categorical rule excluding CCCs from the list of "available penal and correctional facilit[ies]" in which inmates may be placed under §3621(b) (before the BOP's obligations under §3642(c) are triggered), nor did the BOP take that approach during the rule-making

---

[14]A copy of *Muniz* is attached to the Recommendation.

process.  Indeed, the BOP recognized expressly  that it's discretionary authority in promulgating the rule was constrained by the factors enumerated in §3621(b).  *See* 69 Fed.Reg. 51213, 51214 (Aug. 18, 2004)(stating that it had "carefully considered all of the statutorily-specified factors [under §3621(b)], as well as the additional considerations that it identified as pertinent" in proposing the rule).

As discussed previously, by promulgating the rule under the authority of 18 U.S.C. §3621(b), "the BOP necessarily placed CCCs within the category of institutions governed by the statute" . . . [a]nd, since they are available, the BOP must comply with the factors made mandatory by Congress in assigning prisoners to them." *Levine*, 455 F.3d at 82 n.8; *see, also, Muniz.*

To summarize, I recommend finding that 28 C.F.R. §570.21 is an improper exercise of the BOP's rulemaking authority, and is, therefore, invalid. The regulation is contrary to the clear intent of Congress in 18 U.S.C. §3621(b) because it draws the line for prisoner eligibility for placement in one of the institutions on the "available penal or correctional facility" list  *solely* on the basis of the portion of time served, without regard to any of the factors enumerated in the statute.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that Glenn Rosenstein's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241, filed February 28, 2006, be **GRANTED**. It is

**FURTHER RECOMMENDED** that Respondent reconsider Mr. Rosenstein for placement in a Community Corrections Center, in good faith, in accordance with 18 U.S.C. §3621(b), and without regard to 28 C.F.R. §570.20 and §570.21.  It is

**FURTHER ORDERED** that Applicant's Motion for Preliminary Injunction, filed April 13, 2006, be **DENIED AS MOOT.**

 **Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated January 2, 2007.

BY THE COURT:

s\ O. Edward Schlatter
O. EDWARD SCHLATTER
United States Magistrate Judge